DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |  |
|---|---|---|
| JAEL BROWNE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2011-104 |
| ACUREN INSPECTION, INC., | ) ) | |
| Defendant. | ) ) ) | |

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff*

**Micol L. Morgan, Esq.,**
**Charles E. Engeman, Esq.,**
St. Thomas, U.S.V.I.
    *For the Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER is before the Court on Defendant Acuren Inspection, Inc.'s ("Defendant") "Motion to Stay Proceedings Pending Arbitration." (Dkt. No. 4). For the following reasons, the Motion will be granted and the case stayed pending arbitration.

### I.   BACKGROUND

Plaintiff was employed by Defendant and worked at the HOVENSA oil refinery on St. Croix prior to the dispute at issue in this case. (Dkt. No. 1). As a part of her application to work for Defendant, Plaintiff signed a Dispute Resolution Agreement ("DRA") which governed her "application for employment [and] . . . subsequent employment." (Dkt. No. 6, Ex. 1).

On November 22, 2011, Plaintiff filed a Complaint against Defendant, stating that she was constructively discharged. (Dkt. No. 1 at 3). Plaintiff alleges that during her second pregnancy in December 2010, she requested office work during periods of sickness—a request that had been accommodated by Defendant during her previous pregnancy. She alleges that Defendant falsely represented that office work was unavailable, and required her to work in the field or quit her job. (Dkt. No. 1).[1] Plaintiff claims that Defendant "constructively discharged [her] as she could not work in the field sick and as such had no choice but to resign her position in violation of the wrongful discharge statute." (Dkt. No. 1 at 3). She seeks recompense for economic loss as a result of her wrongful termination, as well as damages for consequent reputational and emotional harm suffered.

Defendant filed the instant Motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, arguing that the parties' DRA is valid and requires arbitration as the means of resolving this dispute. (Dkt. No. 4). Plaintiff asserts that her claim for constructive discharge is outside the scope of the DRA, and further that the terms of the DRA are unconscionable. (Dkt. No. 7).

The Court finds that the DRA is a valid arbitration agreement and encompasses Plaintiff's claims. Accordingly, the matter will be referred to arbitration and a stay of the proceedings in this Court, pending arbitration, will be entered.

## II. DISCUSSION

### A. Applicable Law

The FAA "established a strong federal policy in favor of the resolution of disputes through arbitration." *Alexander v. Anthony Int'l., L.P.,* 341 F.3d 256, 263 (3d Cir. 2003); *see*

---

[1] Plaintiff claims that Defendant had started to treat her negatively in retaliation for the filing of a worker's compensation claim against Defendant and a lawsuit against HOVENSA.

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983) (federal law holds a presumption in favor of arbitration where a valid arbitration agreement exists). The Supreme Court has determined that the FAA is to be read broadly and that the statute represents "a congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone,* 460 U.S. at 24, even in the context of "claims arising under a statute designed to further important social policies." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000) (*quoting Moses H. Cone,* 460 U.S. at 24).[2]

The Third Circuit has concluded that a Court must engage in a two-part inquiry in addressing a motion to compel arbitration. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). First, the Court looks to "whether a valid agreement to arbitrate exists and [second,] whether the particular dispute falls within the scope of that agreement." *Id.* at 532 (citing *PaineWebber, Inc. v. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990), *overruled on other grounds by Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 85 (2002)); *see also Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). The "FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate." *Nat'l Fin. Partners Corp. v. Cunning*, 2009 WL 1939818, *3 (D.V.I. July 7, 2009).

The FAA provides that, when presented with a valid arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement," provided that the court is "satisfied that the issue involved … is referable to arbitration" under the parties' agreement. 9 U.S.C. § 3. Arbitration is a "matter of contract" where "litigants may freely contract to refer their dispute to

---

[2] The Virgin Islands Supreme Court has also recognized the strength of the policy favoring arbitration where a valid arbitration agreement exists. *See Martinez v. Colombian Emeralds, Inc.*, 2009 WL 578547, *7 (V.I. March 4, 2009) (citing *Lloyd v. HOVENSA, LLC.*, 369 F.3d 263, 270 (3d Cir. 2004)).

arbitration." *Teamsters Local Union No. 764 v. J.H. Merritt & Co.,* 770 F.2d 40, 42 (3d Cir. 1985); *Gov't of the V.I. v. 0.459 Acres of Land Consisting of the Following: Parcel No. 6A Estate Thomas Kings Quarter & Parcel No. 9A, Estate Thomas, Virgin Islands,* 286 F. Supp. 2d 501, 511 (D.V.I. 2003). Accordingly, where arbitration is the bargained-for or agreed-upon means of resolving controversies, the FAA mandates that a suit filed in the court should be stayed pending arbitration. 9 U.S.C. § 3; *Martinez v. Colombian Emeralds, Inc.*, 2009 WL 578547, *7 (V.I. March 4, 2009).

> B. Analysis
>
> i. Whether a Valid Arbitration Agreement Exists

In order for the FAA to apply, there must be a valid arbitration agreement governing the dispute. 9 U.S.C. § 3. Here, the parties signed the DRA at issue in May 2008, when Plaintiff applied to work with Defendant. The DRA reads:

> I recognize that differences may arise between ACUREN and me in relation to my application for employment or any possible subsequent employment. Both ACUREN and I agree to resolve any and all claims, disputes or controversies arising out of or relating to my application or candidacy for employment, the terms and conditions of any offer of employment, the relationship between me and ACUREN, *any termination of employment with ACUREN*, my presence at the HOVENSA refinery, or *any related matter*, exclusively by final and binding arbitration . . . By way of example only, some of the types of claims subject to final and binding arbitration include claims . . . for discrimination or harassment on the basis of age, race, religion disability, national origin or other basis prohibited by state, federal or territorial law; or claims for breach of any contract, express or implied; any tort claims; any claims for personal injury or property damage; or any claims ACUREN may have against me.

(Dkt. No. 6, Ex. 1) (emphasis added). The DRA also includes a "Special Note" which states that the DRA affects legal rights, and that signatories may wish to seek legal counsel prior to signing. *Id*. Further, immediately above the signature block, the DRA reads: "By signing below, I agree to be bound to this Agreement. I understand that I must arbitrate all claims as described herein, that I may not file a lawsuit in court and that I am waiving my right to trial by jury on all

4

claims encompassed by this agreement. I enter this agreement knowingly and voluntarily." *Id*. By its terms, Plaintiff was required to sign the DRA as a prerequisite to being considered for employment with Defendant. *Id.*

In determining whether an agreement to arbitrate is valid, courts apply the laws of the state where the contract was formed. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Nat'l Fin. Partners Corp.,* 2009 WL 1939818 at *3.  In the Virgin Islands, a valid contract requires a "bargain in which there is a mutual assent to the exchange, and consideration." *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008); *see also Kendall v. Superior Court, Gov't of the Virgin Islands*, 2013 WL 785518, *18 (D.V.I. Mar. 1, 2013); *Univ. of V.I. v. Petersen–Springer,* 232 F.Supp.2d 462, 469 (D.V.I. 2002).  Assent is not measured by subjective intent, but by outward expression.  *Morales*, 541 F.3d at 221; *Fitz v. Islands Mech. Contractor, Inc.*, 2010 WL 2384585, *5 (D.V.I. June 9, 2010).  In an arbitration agreement, consideration exists where both parties agree to be bound by the arbitration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603-04 (3d Cir. 2002) (citing *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 637 (7th Cir.1999) and *Johnson v. Circuit City Stores, Inc.,* 148 F.3d 373, 378 (4th Cir.1998)); *see also Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 180 (3d Cir. 1999); *Plaskett v. Bechtel Int'l, Inc.*, 243 F. Supp. 2d 334, 338 (D.V.I. 2003).

Here, by signing the DRA, both parties agreed to be bound by the provisions which state that disputes would be subject to arbitration.  Thus, consideration exists for the bargain.  *See Blair*, 283 F.3d at 603-04.  The expression of mutual assent is also apparent from the signatures of both parties at the bottom of the DRA, which is immediately preceded by the language: "By signing below, I agree to be bound to this Agreement . . . I enter this agreement knowingly and voluntarily."  (Dkt. No. 6, Ex 1).  Accordingly, the Court finds that the DRA, on its face, is a

valid agreement.

### ii.     Whether the Dispute Falls Within the Scope of the DRA

The Court next looks to whether Plaintiff's claim of constructive discharge falls within the scope of the DRA. *See Trippe Mfg. Co.*, 401 F.3d at 532.  The FAA's presumption in favor of arbitrability indicates that "doubts should be resolved in favor of coverage" if there is *any* interpretation of an arbitration clause that would render a dispute arbitrable.  *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (emphasis added; internal citations omitted).  The Court concludes that the Plaintiff's constructive discharge claim falls squarely within the scope of the arbitration agreement.

The DRA states that the signatories "agree to resolve any and all claims, disputes or controversies arising out of or relating to . . . *any termination of employment* with ACUREN, . . . or *any related matter*." (Dkt. No. 6, Ex. 1) (emphasis added).  The *Oxford English Dictionary* defines "termination" as "the action of ending; putting an end to; bringing to a close." Oxford English Dictionary Online, http://www.oed.com/view/Entry/199427? (last visited March 31, 2014).  Constructive discharge, in turn, is defined as "a termination of employment brought about by making the employee's working conditions [intolerable]." *Black's Law Dictionary* (9th ed. 2009).   The plain meaning of the phrase "termination of employment," therefore, encompasses the circumstances under which an employee puts an end to his/her employment, or ceases to work for an employer.  And, constructive discharge is specifically defined as a particular type of "termination of employment." *Id.*  There is no indication in the DRA that the phrase "termination of employment" is intended to cover only certain types of situations involving the ending of employment. Indeed, the DRA expressly covers "*any* termination of employment."  (Dkt. No. 6, Ex. 1) (emphasis added). The covered circumstances would therefore

6

include constructive discharge or employer-initiated terminations.[3] Thus, the plain language of the DRA clearly includes constructive discharge, and the Court finds that Plaintiff's claim is undeniably within the scope of the agreement to arbitrate. See *AT & T Technologies, Inc.*, 475 U.S. at 650.

### iii. Plaintiff's Challenges to the Applicability of the DRA

Plaintiff makes three arguments challenging the applicability of the DRA in this context. First, Plaintiff argues that her claim is outside the scope of matters for which the DRA requires arbitration because the claim "does not arise out of 'the terms and conditions of any offer of employment' or [is not] specifically due to her 'presence at the HOVENSA refinery' or any matter 'related' to her presence at the HOVENSA refinery." (Dkt. No. 7 at 3).

Plaintiff's reading of the DRA is strained at best. She argues that the "any related matter" language modifies only the preceding "presence at the HOVENSA refinery" clause and thus, because the constructive discharge claim does not pertain to her presence at the refinery or her employment offer, it is outside the DRA's scope. (Dkt. No. 7 at 3). The DRA, in actuality, lists presence at the refinery and "any related matter" within a longer list of arbitrable matters: "claims, disputes or controversies arising out of or relating to my application or candidacy for employment, the terms and conditions of any offer of employment, the relationship between me and ACUREN, any termination of employment with ACUREN, my presence at the HOVENSA refinery, or any related matter" are to be arbitrated. (Dkt. No. 6, Ex, 1). While Plaintiff's presence at the refinery is one example of an arbitrable issue, the language of the DRA is much broader than Plaintiff suggests because the "any related matter" clause modifies *all* of the preceding categories of claims, including "any termination of employment." *Id.* Accordingly,

---

[3] Further, the DRA includes "any related matter" in the list of arbitrable claims, indicating that the agreement is designed to cover not only any termination claim, but any associated disputes as well. (Dkt. No. 6, Ex. 1).

Plaintiff's strained reading of the DRA is unpersuasive.

Plaintiff next argues that a legal distinction must be made between constructive discharge and employment termination which takes the former outside the scope of the DRA. (Dkt. No. 7 at 4). As noted above, the plain meaning of the DRA necessarily encompasses both employer- and employee-initiated termination. There is nothing in the DRA that restricts its application to what Plaintiff describes as an "official termination of employment . . . 'effected through an official act of the company.'" (Dkt. No. 7 at 4) (quoting in part *Pennsylvania State Police v. Suder*, 124 S.Ct. 2342, 2352 (2004)). To the contrary, the DRA states that disputes related to "*any* termination of employment *with* ACUREN," are to be arbitrated, not—as Plaintiff would have it—*particular* terminations *by* ACUREN. (Dkt. No. 6, Ex, 1). The Court will not allow Plaintiff to rewrite the DRA in her Opposition, and will not read a distinction between constructive discharge and employment termination where none exists in the DRA.

Third, Plaintiff asserts that the DRA is an unconscionable bargain and is thus unenforceable. Unconscionability encompasses both procedural and substantive unconscionability, and the party seeking to invalidate a contract on this basis bears the burden of showing both. *Alexander,* 341 F.3d at 265. Procedural unconscionability may exist, for example, with a contract of adhesion—where one party has no meaningful choice regarding acceptance—or, where the contract drafter obfuscates terms with convoluted or unclear language. *Id.* (fine print can render a contract procedurally unconscionable); *see also Harris*, 183 F.3d at 181. Here, Plaintiff sets forth the aforementioned standard, but makes no showing that the DRA is procedurally unconscionable. (Dkt. No. 7 at 5-6). She has not shown that she had no meaningful choice in the matter of acceptance. Nor is there any evidence that the drafter (Defendant) obfuscated or buried unfavorable terms. Accordingly, the Court finds that Plaintiff

has not carried her burden to show procedural unconscionability. On that basis alone, Plaintiff's unconscionability argument must fail.

Equally unavailing is Plaintiff's purported substantive unconscionability argument. Plaintiff claims that the term 'relationship' in the provision of the DRA stating that disputes arising from "the relationship between me and ACUREN" are to be arbitrated is overly broad and amorphous; is "impossible for a layperson to understand;" and thus is substantively unconscionable. (Dkt. No. 7 at 6). However, the beginning of the DRA states that "I recognize that differences may arise between ACUREN and me in relation to my application for employment or any possible subsequent employment." (Dkt. No. 6, Ex. 1).  To the extent that the term 'relationship' requires definition, it is obviously in the context of the application for employment or any subsequent employment relationship, and is not "impossible for a layperson to understand." Moreover, even if the 'relationship' term were deemed to be overly broad or vague, Plaintiff's constructive discharge claim is within the scope of a different clause of the DRA—the employment termination clause.  Thus, the breadth of the term 'relationship' would have no effect on the Court's conclusion here.

In short, none of Plaintiff's arguments alter the Court's conclusion that the DRA, signed by both parties, is a valid agreement to arbitrate, and encompasses Plaintiff's claim. Accordingly, this case will be referred to arbitration and the proceedings in this Court stayed pending arbitration.

### III. CONCLUSION

For the foregoing reasons, the Motion Stay Proceedings Pending Arbitration will be granted and the proceedings stayed. An appropriate Order accompanies this Opinion.

Date: March 31, 2014　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　WILMA A. LEWIS
　　　　　　　　　　　　　　　　　　　　Chief Judge